UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

NATHAN BRYSON, individually,

Plaintiff,

v.

CITY OF TACOMA, a Municipal Corporation,

Defendant.

Case No. C07-5173 FDB

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON § 1983 CLAIM AND DECLINING SUPPLEMENTAL JURISDICTION ON REMAINING STATE LAW CLAIMS

This civil rights action against the City of Tacoma stems from the alleged conduct of police officers in effectuating the arrest of Plaintiff Nathan Bryson without probable cause. Plaintiff initiated this lawsuit in Pierce County Superior Court. The complaint alleges a federal cause of action for municipal liability under 42 U.S.C. § 1983 and state law claims for false arrest and negligence. Defendant City of Tacoma removed the action to this Court on the claim arising under federal law. Before the Court is Defendant's motion for summary judgment on Plaintiff's claim of § 1983 liability and the state law claims for negligence and false arrest. After having reviewed all materials submitted by the parties and relied upon for authority, the Court is fully informed and

ORDER - 1

hereby grants the motion for summary judgment on the § 1983 claim.  The federal claim is dismissed with prejudice and the state law claims dismissed, as the Court declines supplemental jurisdiction.

## INTRODUCTION AND BACKGROUND

On December 31, 2004, Plaintiff Nathan Bryson entered the Bank of America branch on South Union Street in the City of Tacoma.  Plaintiff carried with him a paycheck appearing to have been issued by his employer, Pac-Clean.  When Plaintiff requested to cash the check against his account, Plaintiff was advised by bank employees that his account had a negative balance that would need to be paid.  Plaintiff said he did not want to pay the $32.00 overdraft fee.  The bank teller suggested that Plaintiff go to the nearby U.S. Bank, which the paycheck was drawn on, to cash the check.  Plaintiff then left the bank and returned a short time later.  Plaintiff advised the Bank of America teller that he did not wish to pay the $5.00 fee that U.S. Bank had informed him it would charge to cash the check.  He insisted on cashing the check through Bank of America despite the fact he would have to pay the negative balance in his account.  The bank teller, Deana Torrey thought this unusual.  Ms. Torrey also noted that the paper stock that the check was printed on was unusually thin for a standard payroll check.  An attempt to scan the check through the telescaner proved unsuccessful.  This raised additional concerns regarding the validity of the check and Ms. Torrey contacted her supervisor with her concerns.  Bank of America, following protocols, contacted the originating bank.  U.S. Bank, upon being contacted, faxed over a copy of an authentic Pac-Clean payroll check.  Upon comparison, it was determined that the presented payroll check did not match the appearance or account numbers of the authentic payroll check.  Based on their training and experience, both Ms. Torrey and her supervisor determined that the check presented by Plaintiff appeared to be a forgery.

City of Tacoma police officers responded to the Bank of America's call to investigate the possibility of check fraud.  Plaintiff was detained, handcuffed and placed in the patrol car.  Bank employees advised the police of the circumstances - the appearance of the check, comparisons to the

ORDER - 2

faxed authentic payroll check, and the fact the check would not scan.  The officers also learned that the last payroll check cash by Plaintiff had a different account number and that he had a history of non-sufficient funds.  The officers further observed that the check stub number of the purported payroll check did not match the corresponding number of the presented check.  The issuing party of the check, Pac-Clean, could not be reached by telephone by either the bank or the police officers.  Based on these circumstances, the officers determined there was probable cause to arrest Plaintiff for forgery.

Subsequent to Plaintiff's arrest, a followup contact with the owner of Pac-Clean revealed that the check was not a forgery and had been issued to Plaintiff from an account other than the payroll account.

Subsequently, Plaintiff commenced this action against the City of Tacoma.  Plaintiff has not named any of the individual Tacoma police officers as defendants.

In response to Defendant's motion for summary judgment, Plaintiff confines his argument to the purported lack of probable cause for the arrest.  Plaintiff asserts that every reason for suspecting Plaintiff of committing a crime had an innocent explanation.  These arguments include, but are not limited to, that Plaintiff did not flee when the bank became suspicions, Plaintiff had valid identification, Plaintiff held a Bank of America account, Plaintiff was cooperative, new checks may not match old, employers may have more than one account, the signatures on the checks matched, the scanner may of malfunctioned.  Plaintiff concludes that there is a genuine issue of material fact concerning the existence of probable cause to effectuate an arrest.

## SUMMARY JUDGMENT STANDARD

A court must grant summary judgment if the pleadings and supporting documents, viewed in the light most favorable to the non-moving party, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); see also, Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  When considering a

ORDER - 3

summary judgment motion, the evidence of the non-movant is "to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). These inferences are limited, however, "to those upon which a reasonable jury might return a verdict." Triton Energy Corp. v. Square D. Co., 68 F.3d 1216, 1220 (9th Cir. 1995). Rule 56(c) mandates the entry of summary judgment against a party who, after adequate time for discovery, fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial. Celotex, at 322-23. Rule 56(e) compels the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial" and not to "rest upon the mere allegations or denials of [the party's] pleading." The nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party. Anderson, at 249. Summary judgment is warranted if the evidence is "merely colorable" or "not significantly probative." Id. at 249-50.

## PRINCIPALS OF MUNICIPAL LIABILITY

Municipalities and local governments can be sued directly for violations of constitutional rights under 42 U.S.C.1983 where government officials were acting pursuant to an official policy or recognized custom. Monell v. Dept. of Social Serv. of New York, 436 U.S. 658, 690 (1978). The plaintiff must identify the policy or custom which caused the violation. "The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the conduct alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." Bd. of County Comm'rs of Bryan County v. Brown, 520 U.S. 397, 404 (1997).

Generally, a party may demonstrate municipal responsibility for a constitutional violation in

ORDER - 4

one of three ways. First, a plaintiff might show that an entity with decision-making authority within the municipality expressly enacted or authorized the policy that led to the injury. See Pembaur v. City of Cincinnati, 475 U.S. 469, 480 (1986); Monell, at 694. Second, a plaintiff might prove that the municipality caused the injury by showing the violation was the result of municipal custom. See Pembaur, at 481-82 n. 10. Finally, a plaintiff might show that the constitutional violation is the product of inadequate training on the part of the municipality that amounts to deliberate indifference to the rights of persons with whom the police come into contact. City of Canton, Ohio v. Harris, 489 U.S. 378, 388-89 (1989). On the other hand, a municipality cannot be held liable for the acts of its officers in a § 1983 action based solely on the doctrine of respondeat superior. Monell, at 691.

Plaintiff cannot point to sufficient evidence proving that the City of Tacoma has municipal customs favoring unlawful arrest. A practice is a "custom" only if it is "so persistent and widespread that it constitutes a permanent and well settled city policy." See Trevino v. Gates, 99 F.3d 911, 918 (9th Cir. 1996). Moreover, "[l]iability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." Id. Municipal liability is only appropriate where a plaintiff has shown that a constitutional deprivation was directly caused by a municipal policy. Oviatt v. Pearce, 954 F.2d 1470, 1477-78 (9th Cir. 1992). Such a policy must result from a deliberate choice made by a policy-making official and may be inferred from widespread practices or "evidence of repeated constitutional violations for which the errant municipal officers were not discharged or reprimanded." Menotti v. City of Seattle, 409 F.3d 1113, 1147 (9th Cir. 2005); Gillette v. Delmore, 979 F.2d 1342, 1349 (9th Cir. 1992). Proof of random acts or isolated incidents of unconstitutional action by a non-policymaking employee are insufficient to establish the existence of a municipal policy or custom. McDade v. West, 223 F3d 1135, 1142 (9th Cir. 2000); Trevino v. Gates, 99 F3d 911, 918 (9th Cir. 1996); Thompson v. City of Los Angeles, 885 F.2d 1439, 1444 (9th Cir. 1989). "When one must resort to inference, conjecture and speculation to

ORDER - 5

explain events, the challenged practice is not of sufficient duration, frequency and consistency to constitute an actionable policy or custom." Trevino, at 920. "Only if a plaintiff shows that his injury resulted from a 'permanent and well settled' practice may liability attach for injury resulting from a local government custom ." Thompson, at 1444.

There is no evidence to establish that the use of excessive force (tight hand restraints) or unlawful arrests was a formal policy or widespread practice of the Tacoma Police Department or that previous constitutional violations had occurred for which the offending officers were not discharged or reprimanded. Only admissible evidence can create a triable issue of fact on summary judgment. In this matter, the Court has been presented with no facts demonstrating there is anything more than an alleged arrest without probable cause and an allegation that the hand restraints were too tight. There is no evidence of an intent to ratify the conduct of the officers. There is no credible evidence of prior incidents in which Plaintiff contends the Police Department conducted unlawful arrest or used excessive hand restraints. Plaintiffs' total lack of evidence does not demonstrate a custom or policy which leaves officers free to believe they are immune to discipline for constitutional violations. See Haugen v. Brosseau, 339 F.3d 857, 875 (9th Cir. 2003)(custom or policy can be found when decision supporting action was the product of a conscious, affirmative choice to ratify the conduct in question); Larez v. City of Los Angeles, 946 F.2d 630, 647 (9th Cir. 1991)(determining that reprimand procedures of LAPD were so ineffective that it was almost impossible for a police officer to be disciplined based on a citizen's complaint); Thomas v. City of Chattanooga, 398 F3d 426, 430-31 (6th Cir. 2005)(rejecting custom claim in the absence of evidence that the number of complaints was unusual); Carter v. District of Columbia, 795 F.2d 116, 123 (DC Cir. 1986)(reports of force were scattered and did not coalesce into a discernible policy). Mere recitation of the number of complaints filed does not suffice to prove a policy or custom. A plaintiff must show why those prior incidents deserved discipline and how the misconduct in those cases is similar to that involved in the present action. Bryant v. Whalen, 759 F. Supp. 410 (N.D. Ill.1991); Mariani v.Pittsburgh, 624 F.

ORDER - 6

Supp 506, 509 (W.D. Pa. 1986).

The City of Tacoma is entitled to summary judgment on Plaintiff's 42 U.S.C. § 1983 claim because Plaintiff does not raise a triable issue of fact as to whether the department had any practice or policy that deprived him of his civil rights. See Boyd v. Benton County, 374 F.3d 773, 784 (9th Cir. 2004). There is no evidence of acquiescence and ratification as to establish a triable issue of municipal liability. Plaintiff has not presented any testimony that the City of Tacoma created or maintained a policy whereby civilian complaints of excessive force or unlawful arrest are meaningless. Plaintiff has not presented any evidence to demonstrate that any investigations into prior civilian complaints against these officers or the investigations of his own complaint against the officers was cursory, inadequate, or meaningless. Plaintiff has not presented any evidence that the City of Tacoma acted in any way to condone an unlawful arrest or the use of excessive force against the Plaintiff or others. Thus, the municipal defendant is entitled to summary judgment.

A municipality's failure to adequately train or supervise its officers can give rise to liability under section 1983 as a policy causing constitutional harm. Merritt v. County of Los Angeles, 875 F.2d 765, 769 (9th Cir. 1989); Redman v. County of San Diego, 942 F.2d 1435, 1446-47 (9th Cir. 1991). However, to prevail on such a claim, a plaintiff must demonstrate: (1) an inadequate training program or inadequate supervision; (2) deliberate indifference on the part of the City in adequately training or supervising its law enforcement officers; and (3) that the lack of training or supervision actually caused a deprivation of constitutional rights. Merritt, at 770; Redman, at 1446-47. Plaintiff has presented no evidence concerning the training or supervision received by police officers of the City of Tacoma. Rather, Plaintiff simply relies on the allegation that his constitutional rights were violated to bootstrap the argument that the training or supervision policies were inadequate. Thus, Plaintiff has provided no evidence to demonstrate the level of training received by officers of the Tacoma Police Department and therefore cannot demonstrate that training was inadequate.

Further, the Court notes that Plaintiff has provided no evidence suggesting a deliberate

ORDER - 7

indifference on the part of the City in adequately training or supervision of its officers or any actual causal relationship between the alleged lack of training/supervision and Plaintiffs' injuries. The mere fact that an injury may have been suffered by Plaintiff does not work to prove that the injury was caused by inadequate training/supervision as opposed to the unrelated decision of an officer(s). Accordingly, no reasonable jury could find for Plaintiff on this claim and summary judgment is appropriate.

**SUPPLEMENTAL JURISDICTION**

The Court has supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. § 1367(a). Under 28 U.S.C. § 1367(c)(3), a district court may decline to exercise supplemental jurisdiction over state-law claims where the court has dismissed all claims over which it has original jurisdiction. Voigt v. Savell, 70 F.3d 1552, 1565 (9th Cir. 1995). "In the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine - judicial economy, convenience, fairness, and comity-will point toward declining to exercise jurisdiction over the remaining state-law claims." Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n. 7 (1988). The balance of factors generally indicates that a case belongs in state court when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain. Id.

Here, Plaintiff Bryson's federal claims are being dismissed prior to trial. Because the Court is able to decide Plaintiff's federal claims without reaching the issues underlying Plaintiff's state-law claims remaining in this case, the Court will decline to exercise supplemental jurisdiction over the state-law claims pursuant to 28 U.S.C. § 1367(c)(3). See, Acri v. Varian Assocs., Inc., 114 F.3d 999, 1000 (9th Cir.1997).

**CONCLUSION**

For the reasons set forth above, Defendant City of Tacoma is entitled to dismissal of Plaintiff's

ORDER - 8

42 U.S.C.§ 1983 claim.  The Court declines to retain supplemental jurisdiction over the state law claims.

ACCORDINGLY,

IT IS ORDERED:

Defendant's Motion for Summary Judgment [Dkt # 36] is **GRANTED**.  The federal 42 U.S.C. § 1983 claims are dismissed with prejudice and the state law claims dismissed and remanded to state court as the Court declines supplemental jurisdiction.

DATED this 9th day of June, 2008.

FRANKLIN D. BURGESS
UNITED STATES DISTRICT JUDGE

ORDER - 9